RIDLEY BROWN v. L. B. EATON.

*Holograph Will—Valuable Papers.*

1. A script, written in a book containing accounts against the decedent's tenants, was found eight months after his death, in a bureau drawer or valise, both of which contained valuable papers, and proved by three credible witnesses to be in the decedent's handwriting, and the book was frequently seen by a witness before decedent's death and again on the day after his burial; *Held* upon trial of an issue *devisavit vel non* that the jury were warranted in finding the script to. be the will of the testator.

2. Where one has two or more depositories of his valuable papers, the finding his will in either will suffice.

(*Little* v. *Lockman*, 4 Jones, 494; *Adams* v. *Clark*, 8 Jones, 56; *Winstead* v. *Bowman*, 68 N. C., 170, cited, and approved.)

CIVIL ACTION *devisavit vel non* tried at Fall Term, 1884, of WARREN Superior Court, before *Gudger, J.*

It was proved by six witnesses that the paper writing in controversy was in the handwriting of the decedent, J. Falcon Brown.

W. B. Falcon, a witness for the propounder, testified that the book in which the paper writing was contained was kept by his uncle (the deceased) in his house, and had in it his accounts with his tenants. He had seen it frequently before his uncle's death, which occurred May 8, 1883, and he saw the book again the day subsequent to his burial, when Brown the propounder requested the witness to go with him to examine the papers of the deceased. Papers were found in a bureau drawer, and also in a leather valise or trunk, but the witness did not know whether the book was in the bureau drawer or in the valise. They were placed together on the floor and their contents examined, and an inventory taken at the time. There were valuable papers in both places; in the valise, the witness remembered

the following were found : a note on G. B. Alston for about $2,200, which was good ; $50 in United States currency ; and other papers, receipts, &c., of less value ; and in the bureau drawer, were found $50 in gold and $12 in silver ; a mortgage on Nat. Nicholson for about $1,000 or $1,500, which was good ; and some other papers. Both the valise and drawer were locked.

After taking the inventory, the book was put into the drawer which was locked, and the propounder Brown took the key. The witness next saw the book during the Christmas holidays thereafter, when it was brought to his house by Brown and his son, and then for the first time he saw the paper writing and recognized it as the handwriting of his uncle.

The paper writing was in pencil in a book sewed together in paste-board covers.

Ridley Brown, the propounder, testified that the book containing the paper writing was found in a drawer or valise, both of which were locked, and the papers examined as testified to by the witness Falcon. The valise contained old deeds to parts of his land ; some good and some worthless notes ; one note on G. B. Alston for about $2,200, good, and $50 in greenbacks, and the witness was inclined to the opinion that the book was in the valise. In the drawer, were some deeds and receipts ; a mortgage against Nat. Nicholson for about $1,000 or $1,500 ; fifty dollars in gold and some silver, and some correspondence. He did not examine the book at that time, but put it in the drawer and locked it and kept the key. He put it in the drawer with papers which he did not think it necessary to take away, but carried with him to his house (two miles distant) all papers out of which he thought any money could be made, and left the book there for convenience of settlement with the tenants. He next saw the book in November when looking for a tenant's account, but did not then see the paper

writing; and in December he next saw the book. He sent his son to examine a tenant's account and gave him the key to the bureau drawer for that purpose, and on that day saw the paper writing. which was shown him by his son. The key to the room, in which was the bureau, was kept by a Miss Shearin who lived in the house and was an illiterate woman.

There were accounts for the current year in the book containing the paper writing, many of which were collected according to the book.

Falcon Brown, son of the propounder, testified that he went for the book about the 27th of December. He got the key to the drawer from his father, and examined the book for one Stanberry's account, and found the paper writing on that occasion and carried it to his father and they then went together to Falcon's carrying the book with them.

Upon this evidence it was agreed that if the paper writing was properly found as required by the statute, then the jury should render a verdict for the plaintiff propounder; and if not, then for the caveators.

His Honor, being of opinion with the propounder, so charged the jury and the issue was found accordingly. Judgment; appeal by defendant.

*Messrs. W. A. Montgomery* and *Battle & Mordecai*, for plaintiff.

No counsel for defendant.

ASHE, J. The only question presented by the record for the determination of this court, is—Was there such a finding of the paper writing as is required by the statute?

The statute provides that " no last will or testament shall be good or sufficient in law or equity to convey or give any estate, real or personal, unless such last will shall have been

written in the testator's lifetime, and signed by him or some other person in his presence and by his direction, and sub-scribed in his presence by two witnesses at least, no one of whom shall be interested in the devise or bequest of the said estate; or unless such last will and testament be found among the valuable papers and effects of any deceased person, or shall have been lodged in the hands of any person for safe keeping, and the same shall be in the handwriting of such deceased person, with his name subscribed thereto, or inserted in some part of said will; and if such handwriting shall be proved by three credible witnesses who verily believe such will and every part thereof is in the handwriting of the person whose will it appears to be, then such will shall be sufficient to give and convey real and personal estate." Rev. Code, ch. 119, § 1; THE CODE, § 2136.

It is not disputed that the paper writing offered for probate was in the handwriting of J. Falcon Brown, and that his handwriting was proved by three credible witnesses; but it is contended that it was not found among his valuable papers and effects, according to the requirements of the statute, so as to constitute it the last will and testament of the said Brown.

The counsel for the caveators relied upon the cases of *Little* v. *Lockman*, 4 Jones, 494, and *Adams* v. *Clark*, 8 Jones, 56. We do not controvert the decision in those cases. They were correctly decided upon the facts presented. In the first case, the script propounded was found in the drawer of a bureau among some *worthless papers and rubbish*, and there were valuable papers and effects kept in another drawer of the same bureau; the script was not found among the valuable papers and effects. And in the latter case, which the learned counsel contends is analagous to the one before us, the script was seen eight months before the death of the decedent, when he was seen to put it in a pocket book, in which he usually carried bank bills, and not seen again

until shortly before the trial of the issue, and *it was held* that that was no evidence it was found *at* or *after* the *death* of the decedent.

But the facts of our case are altogether different. Here, the will was written in a book with paste-board covers in which accounts against tenants of the decedent were kept by him for the purpose of settlement with them. The book was frequently seen by one of the witnesses before decedent's death, and again on the day subsequent to his burial. The book was kept either in a bureau drawer or in a valise, but in the one or the other, both of which were kept locked. And notwithstanding the will was not discovered until eight months after the death of J. Falcon Brown, there is a moral certainty that the will was in either the drawer or valise at the time of his death, and the jury were well warranted in so finding.

The only other inquiry then to make it the will of the decedent, is—Was it found among his valuable papers and effects?

There were valuable papers in both the drawer and valise. In the drawer, were some deeds, a mortgage against Nat. Nicholson for about $1,000 or $1,500, some receipts, fifty dollars in gold and some silver. In the valise, were old deeds to parts of his land, some notes, one on G. B. Alston for about $2,200, fifty dollars in greenbacks, and one of the witnesses expressed the belief that the book was in the valise; and the book itself containing accounts against his tenants was a valuable paper, and title-deeds, notes and money are certainly valuable effects.

So that, no matter whether the script was found in the drawer or valise, it was found among his valuable papers and effects, and having been proved by three credible witnesses to be in the handwriting of J. Falcon Brown, it comes up fully to the requirements of the statute.

Where a person has two or more depositories of his val-

uable papers and effects, the *finding* in either will suffice. It is not necessary it should be found in that which contains the most valuable papers and effects.   *Winstead* v. *Bowman,* 68 N. C., 170.

There is no error.   Let this be certified to the superior court of Warren county that further proceedings may be had according to law.

No error.                                    Affirmed.