IN RE THE LAST WILL AND TESTAMENT OF ANNIE PARSONS, DECEASED.

(Filed 28 January, 1935.)

**Wills C d—Fact that paper-writing in testatrix's handwriting contains immaterial, printed words does not render writing invalid as holographic will.**

A paper-writing in the handwriting of testatrix, duly proven by three credible witnesses, signed by testatrix and found among her valuable papers after her death, which paper-writing contains dispositive words sufficient to dispose of the estate, is valid as a holograph will, and it is not necessary that the writing be dated or show the place of execution, N. C. Code, 4131, 4144 (2), and the fact that the paper-writing contains printed words not essential to the meaning of the written words does not render such paper-writing invalid as a holograph will, and the charge of the court on this aspect of the case *is held* without error. In this case the will was written on a printed form for nuncupative wills and there was evidence that the written words disposed of the estate in accordance with the declared intention of testatrix.

---

IN RE WILL OF PARSONS.

---

APPEAL by caveators, from *McElroy, J.,* and a jury, at July, 1934, Term, of ASHE. No error.

Annie Parsons died on 10 April, 1933. On 10 July, 1933, under N. C. Code 1931 (Michie), secs. 4131 and 4144, subsec. 2, the purported will was duly probated in common form by the clerk of the Superior Court of Ashe County, N. C.

The purported will is as follows: *"In the Name of God Amen.* (All words and letters in italics being in printed form of purported will.) Here a space is cut and removed—7⅛ x 10¼. 3rd. I give the Asa Weaver old home place to my niece, Luna Weaver, with all the personal property house furnishing provided she takes care of my brother George W. Weaver during his lifetime.

*"I hereby appoint* Winfield A. Weaver, of Piney Creek, Alleghany County, North Carolina, *to be Executor of this my last Will and testament hereby revoking all former Wills by me made.*

*"In witness whereof I have hereunto subscribed my name and affixed my seal the 14 day of July, in the year of our Lord, 1922.* Witnesses: B. C. Waddell, Margaret Rankin—Annie Parsons.

*"University Hospital, Baltimore, Md. Subscribed by........ ............the Testat............ named in the foregoing Will, in the presence of us and at the time of making such subscription, the above instrument was declared by the said Testat............ to be. ........ ......last Will and Testament, and each of us, at the request of said Testat............and in...............presence and in the presence of each other, signed our names as witnesses thereto.*

" . ...................Residing .......................................
" . . . .................Residing .......................................
"  ..................... Residing ................................. .....

Notary Public

... ............... ........................... .. ...................

(OVER)

"On the opposite side appears the following: 'I want my sister-in-law, Ettie King, to have J. O. Parsons ................. . ........' "

A caveat was filed by the sister of Annie Parsons, Mary S. Phipps, *et al.,* and citation was duly issued in accordance with law for the heirs at law and next of kin of Annie Parsons. The cause was duly transferred to the Superior Court on the issue of *devisavit vel non.*

The following issue was submitted to the jury and their answer thereto: "Is the script or paper-writing offered for probate, and every part thereof, except the printed matter and the signatures of the witnesses, the last will and testament of Annie Parsons, deceased? The jury answered the foregoing issue, 'Yes.' "

On the verdict, judgment was rendered for propounders. Caveators made numerous exceptions and assignments of error and appealed to the Supreme Court.

*Ira T. Johnson and Grant Bauguess for caveators-appellants.*
*R. A. Doughton and R. F. Crouse for propounder-appellees.*

CLARKSON, J. The question presented is whether or not the purported will, as set forth in the record, complies with the requirements of law so as to be admitted to probate as a holograph will, under N. C. Code 1931 (Michie), sec. 4131 and sec. 4144, subsec. 2. We think so, under the facts and circumstances of the case.

Section 4131 is as follows: "No last will and testament shall be good or sufficient in law to convey or give any estate, real or personal, unless such last will shall have been written in the testator's lifetime, and signed by him, or by some other person in his presence and by his direction, and subscribed in his presence by two witnesses at least, no one of whom shall be interested in the devise or bequest of the estate, except as hereinafter provided; or, unless such last will and testament be found among the valuable papers and effects of any deceased person, or shall have been lodged in the hands of any person for safe-keeping, and the same shall be in the handwriting of such deceased person, with his name subscribed thereto or inserted in some part of such will; and if such handwriting shall be proved by three credible witnesses, who verily believe such will and every part thereof is in the handwriting of the person whose will it appears to be, then such will shall be sufficient to give and convey real and personal estate."

Sec. 4144, subsec. 2, is as follows: "In case of a holograph will, on the oath of at least three credible witnesses, who state that they verily believe such will and every part thereof is the handwriting of the person whose will it purports to be, and whose name must be subscribed thereto, or inserted in some part thereof. It must further appear on the oath of some one of the witnesses, or of some other credible person, that such will was found among the valuable papers and effects of the decedent, or was lodged in the hands of some person for safe-keeping."

The following is in the handwriting of Annie Parsons and found among her valuable papers: "3rd. I give the Asa Weaver old home place to my niece, Luna Weaver, with all the personal property house furnishing provided she takes care of my brother George W. Weaver during his lifetime. . . . Annie Parsons."

The court below, among other things, charged the jury as follows: "The paper must be in the handwriting of the deceased. This is to identify the testator and to form the casual connection between the

writer and the writing and to prevent the possibility of change and alterations without consent of the testator. The name of the testator must be subscribed to the paper or inserted in some part thereof, and this is also for identification of the testator, and to furnish evidence of the paper being a completed instrument.

"It is said that the provisions of the statute are, of course, mandatory and not directory, and, therefore, there must be a strict compliance with them before there can be a valid execution and probate of a holograph script as a will; but this does not mean that the construction of the statute should be so rigid and binding as to defeat its clear expressed purpose. It must be construed and enforced strictly, but at the same time reasonably.

"(When all the words appearing on a paper in the handwriting of the deceased person are sufficient to constitute a last will and testament, the mere fact that other words appear thereon, not in such handwriting, but not essential to the meaning of the words in such handwriting, cannot be held to defeat the intention of the deceased, otherwise clearly expressed, that such paper-writing is and shall be her last will and testament. There is no statutory requirement in this State that the holograph script shall be dated, or shall show the place where it was executed by the testator.)"

To the latter part of the charge, in parentheses, the caveators excepted and assigned error. This exception and assignment of error cannot be sustained.

*In re Will of Lowrance,* 199 N. C., 782 (785), it is said: "When all the words appearing on a paper in the handwriting of the deceased person are sufficient, as in the instant case, to constitute a last will and testament, the mere fact that other words appear thereon, not in such handwriting, but not essential to the meaning of the words in such handwriting, cannot be held to defeat the intention of the deceased, otherwise clearly expressed, that such paper-writing is and shall be his last will and testament. There is no statutory requirement in this State that the holograph script shall be dated or shall show the place where it was executed by the testator. The words in print appearing on the sheets of paper propounded in the instant case are surplusage. They are not essential to the meaning of the words shown by three credible witnesses to be in the handwriting of Mrs. S. A. Lowrance. These words, without the printed words, are sufficient to constitute a testamentary disposition of property, both real and personal."

The above case, we think, supports the charge of the court below and is similar to the present case. See discussion of the law in different states, in Page on Wills, 1st Volume, 2d Edition, sec. 367, pp. 585-6.

It was in evidence that Annie Parsons had a brother, George W. Weaver. She owned a place known as the Asa Weaver old home place, on which she and her brother, George, lived. George had lived with her about 26 years and was about 75 years of age. George's mind was not good and he lived in the old storehouse in the yard, about 100 feet from the house. Annie Parsons looked after him. Luna Weaver is a niece, who, when she taught school in the county, boarded with her aunt.

Dewey Eller testified, in part: "I heard Mrs. Parsons say during her lifetime, after she came back from the hospital, that she stopped at Ettie King's and was not treated right, and she was afraid she would not treat her brother, George, right, and that she changed her will. And I heard her say that she did not want Charlie and Chester Phipps to have anything she had."

The charge of the able and learned judge in the court below was full and explicit, covered every phase of the controversy, and explained the law applicable to the facts. The only exception to the charge is the one above set forth. There was no error in the refusal of the court below to give certain special instructions prayed for by caveators. We think the issue submitted to the jury correct, under the facts in this case, and determinative of the controversy.

In the judgment of the court below we find
No error.